COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Humphreys and Senior Judge Overton


CAROLE E. VANCE
                                    MEMORANDUM OPINION*
v.   Record No. 1017-03-3              PER CURIAM
                                     AUGUST 26, 2003
LOWES OF STAUNTON AND
 LOWES HOME CENTERS, INC.


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (A. Thomas Lane, Jr., on brief), for
            appellant.

            (Mary Beth Nash; Gentry Locke Rakes & Moore,
            on brief), for appellees.


     Carole E. Vance contends the Workers' Compensation

Commission erred in finding that she (1) unjustifiably refused

selective employment offered to her by her employer, Lowes of

Staunton; and (2) failed to prove she was totally disabled as of

November 2001, as a result of her May 25, 1997 compensable

injury by accident.  Upon reviewing the record and the parties'

briefs, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the commission's decision.

Rule 5A:27.

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.  Unjustified Refusal of Selective Employment

"When the employer establishes that selective employment was offered to an employee that was within the employee's capacity to work, the employee bears the burden of establishing justification for refusing the offered employment."  Food Lion, Inc. v. Lee, 16 Va. App. 616, 619, 431 S.E.2d 342, 344 (1993). The employee may satisfy her burden by "put[ting] forward real and substantial reasons for her refusal . . . such that a reasonable person desirous of employment would have refused the offered work."  Johnson v. Virginia Employment Comm'n, 8 Va. App. 441, 452, 382 S.E.2d 476, 481 (1989).

Ruling that Vance was not justified in refusing employer's March 29, 2001 offer of selective employment, the commission found as follows:

> The evidence showed that the employer offered [Vance] selective employment that complied with her restrictions.  [Vance] testified specifically that the employment as a cashier was too strenuous, however, because she was required to move heavy items when customers were checking out.  The evidence showed that [Vance] could call for assistance under these circumstances, but [she] denied that assistance was forthcoming.  We agree with [Vance] that having to wait lengthy periods for assistance while agitated customers attempted to check out would be poor customer service, but we do not believe that [she] was thereby justified in refusing to perform the work under such circumstances.

Credible evidence supports these findings.  Dr. Richard Miller reviewed the cashier job description in January 2001 and

opined that Vance could perform that job with some modifications, including assistance in lifting items and a stool for her to sit on. Dr. Miller indicated in a letter that he and Vance had reviewed the cashier job description and that Vance felt that she could perform most of the functions of the job. Dr. Miller noted that Vance would not be able to carry customers' purchases to vehicles, that she might have some difficulty pulling stock from overhead areas, and that she would have difficulty moving objects up to 200 pounds. Dr. Miller indicated that Vance needed to have periods of intermittent sitting and short walks, and acknowledged that employer had provided Vance with a stool which allowed for free movement. Dr. Miller approved the cashier job for Vance with accommodations for her restrictions.

Vance testified that between March 17, 2001 and March 26, 2001 she performed the job with some modifications and sometimes had to wait thirty minutes for help. Although she had a stool and could scan some items without difficulty, she contended that she had a "terrible time" performing the cashier job because she had to turn other items for scanning, to bend and stoop, and to move items around on the counter. Vance admitted, however, that she was never the only cashier on duty, that she had a telephone to call for help, and that managers and loaders were present in the store at all times.

On March 26, 2001, Dr. Bart Balint restricted Vance to light-duty with no lifting over twenty pounds, no twisting, no bending at the waist or lifting over shoulder height, and no kneeling, crawling or stooping. Three days later, Vance returned to work as a telephone operator. After forty-five minutes, she was reassigned to the cashier job because the telephone operator job was no longer available. Vance told her supervisor that the cashier job did not fit within her doctor's restrictions, and she left work. Vance admitted that Renny McGann, the assistant store manager, told her that help would be available if she needed it and that she would be supplied with a stool. Vance considered the cashier job to be demeaning and "beneath her."

Georgeanna Logan, employer's former administrative clerk, testified, however, that she observed Vance performing the cashier job and that Vance did not appear to have any difficulty performing her duties. Logan also testified loaders were always available to load heavy items into customers' vehicles and to help the cashiers with bulky items. Vance told McGann on March 29, 2001, that she could not perform the cashier's job; Vance and McGann reviewed Vance's restrictions and McGann offered to make accommodations for Vance. In addition, Jeffrey Scott Clendenon, a store manager, testified that other employees were available to assist Vance if she requested help. Vance still refused to perform the cashier's job.

- 4 -

Tina Myers, employer's personnel training coordinator, testified that after Dr. Miller reviewed the job description and informed employer of modifications that needed to be made to the job for Vance, employer offered Vance the cashier job with modifications, which she performed for a period of time. The only problem Vance reported to her at that time was that she needed a different type of stool. The employer provided another stool to Vance. After Vance's right shoulder injury in January 2001, she worked as a telephone operator. When Myers received Dr. Balint's March 26, 2001 light-duty restrictions for Vance, employer again offered Vance the cashier job with modifications, which Vance contended she could not do because of her restrictions.

Upon this evidence, the commission could reasonably conclude that Vance was not justified in refusing to perform the cashier job on March 29, 2001. Accordingly, the record does not establish as a matter of law that Vance's evidence sustained her burden of proving she was justified in refusing employer's offer of selective employment on March 29, 2001. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970). Thus, the commission's findings are binding and conclusive on appeal. Id.

- 5 -

## II.  Disability after November 2001

Denying Vance's claim for an award of temporary total disability benefits beginning in November 2001, the commission found as follows:

> On March 26, 2001, Dr. Balint issued light-duty restrictions, advising against lifting over twenty pounds.  Dr. Miller examined [Vance] on December 12, 2001, but did not issue any work restrictions.  On April 20, 2002, Dr. Miller opined that he was not sure that [Vance] had any period of total disability but that at "the times I have seen her and been involved, both correlate I felt that she was able to work with limitations."  Dr. Miller examined [Vance] on April 25, 2002, and did not mention work restrictions.  On June 10, 2002, however, Dr. Miller opined that [Vance] was "totally disabled from a medical standpoint" and had been so "since Nov. 01."  Dr. Miller confirmed this opinion on August 2, 2002, noting that "her current disabling problems [were] right knee trauma and pain, neuropathic right sided body pain and her right shoulder injury [which] date back to her 5/25/97 injury and subsequent problems."

> As noted above, the evidence did not show that the claimant's right shoulder problems were the result of the May 1997 accident.  Thus, [Vance] suffered from compensable right knee problems, which were not totally disabling, as shown by Dr. Miller's April 20, 2002, opinion. [Vance] also suffered from non-compensable right-shoulder problems, which also were not totally disabling.  Thus, it was not clear why Dr. Miller opined in June 2002 that [Vance] was totally disabled since November 2001.  We agree with the deputy commissioner that Dr. Miller's opinion was not credible and that the evidence showed that [Vance] was able to perform selective employment.

- 6 -

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991).  As fact finder, the commission weighed Dr. Miller's various medical records and opinions and found persuasive the absence of contemporaneous notes from Dr. Miller indicating total disability as of November 2001.  On April 20, 2002, Dr. Miller responded to Vance's attorney's questionnaire indicating that he felt Vance was capable of light-duty work the times he had seen her.  Vance's other physicians opined that she was capable of light-duty work as of November 2001.  In light of these factors, the commission was entitled to conclude that Dr. Miller's retroactive opinion was not credible and did not provide sufficient evidence to prove that Vance was totally disabled as of November 2001, as a result of her compensable right knee injury.

Because the medical evidence was subject to the commission's factual determination, we cannot find as a matter of law that the evidence proved Vance was totally disabled as of November 2001.  Vance did not appeal the commission's finding that her right shoulder problems were not a compensable consequence of her May 25, 1997 right knee injury.  Accordingly, that finding is binding and conclusive upon us on appeal.

For these reasons, we affirm the commission's decision.

Affirmed.

- 7 -